**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | 1:08-cr-003-JDR |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION** |
| | (Trial by Court) |
| KENNETH A. BELLOWS, | |
| Defendant. | |

Kenneth A. Bellows is named in a two count Information with "conducting any kind of work activity or service [on National Forest System Lands] unless authorized by federal law, regulation, or special-use authorization" in violation of 36 C.F.R. § 261.10(c). The information charges that the offenses occurred on or about May 18, 2007 and May 22, 2007. The gravamen of the government's claim is

1-08-cr-003-JDR                          MEMORANDUM OPINION                          07/18/2008 Page 1 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

that Bellows conducted guiding activities on federal lands without authorization. Trial by Court occurred on March 20, 21, April 17, 18, 2008. For reasons stated below the court concludes that the government has not met its burden of proof as to either count.

## Background

The Secretary of Agriculture promulgated 36 C.F.R. Section 261.10(c) addressing occupancy and use of Forest Service land in relevant part as follows: "The following are prohibited: . . . (c) . . . conducting any kind of work activity or service unless authorized by Federal law, regulation, or special-use authorization." Thus, the government must prove beyond a reasonable doubt that Bellows conducted some kind of work activity or service on national forest lands and that he was not authorized by Federal law, regulation, or special-use authorization to conduct that activity. United States v. Strong, 79 F.3rd 925, 928 (9th Cir. 1995). The prohibited activities must have been undertaken for remuneration. Id.

The court gives deference to specific policy determinations of the administrative agency unless they are arbitrary, capricious, or manifestly contrary to the statute. The court must give substantial deference to the agency's interpretation of its own regulations. Id. at 928-929.

A forest service regulation defines "guiding" as follows:

"Guiding - providing services or assistance (such as

supervision, protection, education, training, packing, touring,

1-08-cr-003- JDR                    MEMORANDUM OPINION                    07/18/2008 Page 2 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

subsistence, transporting people, or interpretation) for

pecuniary remuneration or other gain to individuals or groups

on National Forest System lands."

36 C.F.R. § 251.51. The Forest Service's interpretation of its regulations is found in the

U.S.F.S. Special Uses Handbook (FSH) that relates to "outfitter and guide service." In

pertinent part that section provides:

### 2721.53 – Outfitter and Guide Service

The following commercial air taxi, auto taxi, and boat

charter operations involving National Forest System land

(as defined in 36 C.F.R. 251.51), improvements, or

resources, require authorization by a charged special use

permit with fees calculated in accordance with FSH

2709.11.

. . .

5.      Tours include auto/bus or boat sight-seeing and

flight-seeing trips that use National Forest System lands,

improvements or resources. A tour is a round-trip

transportation regardless of the number of stops or

landings– that is, a trip having the same general starting

and ending point – the principal purpose of which is to

view National Forest System lands or resources.

1-08-cr-003-JDR BELLOWS Memorandum Opinion - Acquittal_mtd.wpd                                    3

1-08-cr-003-JDR          MEMORANDUM OPINION                    07/18/2008   Page 3 of 21
Case 1:08-cr-00003-JDR   Document 35   Filed 07/21/08   Page 3 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

Throughout the duration of a sight-seeing, flight-seeing, or other tour, including the time that the operator's client(s) is (are) present upon National Forest System lands, improvements or resources, the tour operator or a representative thereof remains within proximity of the client(s), or, if leaving the proximity of the client(s), returns thereto within a one-hour period.

Other attributes of a tour typically include the offering of interpretative services by the tour operator or representative thereof. Fees for tours are usually charged per passenger, rather than per hour of operation or by distance traveled, and are set based upon the presence of a minimum number of passengers per trip. In addition, tours are generally marketed by using the words "tour," "sight-seeing," "flight-seeing" or similar words. However, none of these particular attributes need be present in order for round trip transportation to be deemed a tour.

6. Package Trips include:

a.      Outfitted trips, which provide supplies, equipment, boats, vehicles, and so forth, either loaned or rented, onto

1-08-cr-003-JDR BELLOWS Memorandum Opinion - Acquittal_mtd.wpd

4

1-08-cr-003-JDR                    MEMORANDUM OPINION                    07/18/2008 Page 4 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

Case 1:08-cr-00003-JDR   Document 35   Filed 07/21/08   Page 4 of 21

National Forest System lands, improvements or resources.

b.      Guided trips that provide customer care, food, shelter, tutorage, interpretation, care of fish and game meat and trophies, or other services besides or in addition to strictly point-to-point transportation commonly included in guiding, on National Forest System lands, improvements or resources.

c. Non-guided, non-outfitted trips onto National Forest System lands, improvements or resources with fees in excess of competitive point-to-point transportation rates.

The principal purpose of a package trip is to provide or facilitate an outdoor recreation experience on National Forest System lands, improvements or resources. Package Trips are typically, but not necessarily, marketed by using words such as: "fishing," "hunting,""camping," "photography," "rafting," "kayaking," "mountain climbing," "nature education," or other type of outdoor recreation activity.

1-08-cr-003-JDR                    MEMORANDUM OPINION                    07/18/2008  Page 5 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

Strictly point-to-point air, auto/bus, or boat transportation services at competitive rates to National Forest System lands, improvements or resources, that is, trips that are not a tour or package trip as defined above, do not require a permit. However, in areas where activities are causing conflicts with National Forest System land-based recreational users, operators must cooperate with the District Ranger in reducing user conflicts."

## Facts

David Zuniga, a federal law enforcement officer with the U.S. Forest Service was dispatched on May 18, 2007 to Politofski Lake to investigate a suspected illegal guiding by person(s) using a white plane with red stripes and three 9's in the tail number. Politofski is considered a wilderness lake. Officers Zuniga and his pilot landed at the lake about Noon. They observed such a plane on the lake near the outlet stream at the south end. The airplane was later identified as belonging to the defendant, Kenneth Bellows.

Officer Zuniga walked southwardly on the trail and eventually came across Bellows who was fishing in a stream about 100 yards from his airplane. He introduced himself and requested to see his fishing license. Bellows stated that his fishing license was with his gear which was down river. Bellows led the way and

1-08-cr-003-JDR                    MEMORANDUM OPINION                    07/18/2008  Page 6 of 21
Case 1:08-cr-00003-JDR   Document 35   Filed 07/21/08   Page 6 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

further down stream the two came to a point at the bank where Bellows stated they had to cross the stream. Officer Zuniga noticed an elderly couple later identified as Dr. Robert Duncan Wallace and his wife, fishing about 40 to 50 yards on the other side of the river. They were wearing chest waders.

The Wallaces were in the water directly across from a fallen tree. They were fishing close to where backpacks were located. Bellows retrieved his fishing license from one of the backpacks. The Wallaces were also asked to produce their licenses which they did. Mrs. Wallace had a walking stick or cane and appeared to have some difficulty getting out of the river. Officer Zuniga offered to help her but she declined.

Bellows was wearing a shoulder holster with a revolver. Bellows volunteered that he was not guiding the couple and asked Officer Zuniga if he was there at the request of Special Agent Michael Williams who had repeatedly interviewed him about guiding operations that he might be conducting.

Robert Wallace had met Bellows several years ago when he rode with him on a flight from a lodge in Angoon, Alaska to Juneau. He eventually made arrangements to fly fish for steelheads in May 2006, but postponed the trip to May 2007. He and his wife arrived in Sitka on May 16, 2007 and stayed four nights in the Fly In Fish Inn run by Bellows' sister, Marlys Dee Hanson. Wallace made the

1-08-cr-003-JDR                MEMORANDUM OPINION                    07/18/2008 Page 7 of 21
                          (Trial by Court - Judgment of Acquittal)
                            Signed by Judge John D. Roberts

reservations at the bed and breakfast through Marlys Hanson.  His primary point of contact for the fishing transportation was Kenneth Bellows.

Although Dr. Wallace had read about steel head streams in Alaska and that some lodges were taking people to Baranof Island and Chichagof Island to fish, he relied upon the knowledge of Bellows as to what stream to fish for steel heads during his May 2007 stay.

The Wallaces brought their own food along with them for the fishing trip and none of their fishing equipment was provided by either Bellows, Air Sitka or Fly In Fish Inn.   Wallace assumed that Bellows would be with them off and on and invited Bellows to fish if he chose.  Prior to the flight Bellows provided the Wallaces with his estimate of how many bends were in Politofski Creek and the length of the creek.  Bellows did not indicate how many fishing holes were there.

Dr. Wallace observed Bellows on one occasion assisting his wife in walking, namely helping her over a log.  He also saw Bellows appear to steer his wife in the direction of where to go but he did not know what Bellows told her. Wallace was unable to recall whether his wife was walking ahead of Bellows.

Prior to the fishing trip Mrs. Wallace was greatly concerned about her safety from bears and almost cancelled her trip.  On the flight to Politofski Creek Bellows told the Wallaces that the bears were still hibernating.  Mrs. Wallace would not have been comfortable fishing alone at Politofski Lake on the first day of their

1-08-cr-003-JDR    Case 1:08-cr-00003-JDR   Document 55   Filed 07/21/08   Page 8 of 21 Page 8 of 21
MEMORANDUM OPINION
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

fishing trip if Bellows had not accompanied them at the creek. Wallace is 69 years old and has diabetes. A cardiac CT scan prior to this fishing trip had indicated that he had a 30 - 50% narrowing of his left anterior descending coronary artery and he did not want to fish alone in a remote area for fear that he might have a possible heart attack or arrhythmia.

The government argues that Bellows provided supervision to the Wallaces when he walked down the drainage creek because Dr. Wallace wanted to have somebody nearby. Bellows could meet that need without providing supervision. He did not need a permit to fish on his own in the same stream while the Wallaces were fishing without providing them any guiding services. Although Bellows was fishing on the same creek he was not supervising the Wallaces.

On the second day of fishing Dr. and Mrs Wallace were together having lunch when Officer Zuniga arrived. Wallace carried with him a fishing booklet which contained a lot of information about fishing. Wallace was clear, positive and credible that Bellows had not acted as a guide "by any stretch of the imagination." Wallace bought flies from a fly shop in Sitka owned by William F. McNally.

The government presented the testimony of Thomas C. Williams, the financial officer for Ward Air Services located in Juneau, Alaska. Ward Air operates as an on-demand air taxi service under FAA Part 135. Part 135 operators are not allowed to guide. In May 2007 Ward Air charged $440.00 an hour for a flight in their

1-08-cr-003-JDR    Case 1:08-cr-00003-JDR   Document 35   Filed 07/21/08   Page 9 of 21
MEMORANDUM OPINION
(Trial by Court - Judgment of Acquittal)
Signed by Court Judge John D. Roberts

Cessna 185.  On May 17, 2007 Ward Air added a 2% fuel surcharge bringing the total hourly cost to $448.80.  If a passenger asked Ward Air to standby, that is, wait for the passenger to conduct his business prior to the return flight, Ward Air's rate for stand-by time was half of their charter rate exclusive of the fuel surcharge because they are not burning fuel.  According to Williams it would be highly unusual for someone to ask for 3 or 4 hours of stand-by time.  When their pilots provide stand-by they sometimes fish or wait in the airplane.  In the summertime Ward Air is too busy to allow for much stand-by time so his business discourages its use.  The cost of a flight to an unscheduled destination would be the hourly rate times the number of hours of flying time.  The cost of the trip would not be quoted per person but the particular passengers could figure out the per person cost if, for example, one passenger was not paying for the entire trip.

Mary Emerick is a U.S. Forest Service Special Uses Administrator and Wilderness Manager for the South Baranof Wilderness and West Chichagof Wilderness.  Whenever someone seeks a permit to guide on national forest lands in southeast Alaska she conducts the first level of screening.  She considers what they are asking to do and whether it is consistent with law and policy.  She also discusses any proposal with the district ranger before she makes a final decision.  Ms. Emerick is the only person who works on outfitter guide permits for the Sitka Ranger District.

1-08-cr-003-JDR                    MEMORANDUM OPINION                    07/18/2008; Page 10 of 21
Case 1:08-cr-00003-JDR   Document 38   Filed 07/21/08   Page 10 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

Politofski Lake is in the Sitka Ranger District and within the South Baranof Wilderness. The lake is on Baranof Island, south of Sitka. Point-to-point travel to Politofski Lake is permissible without a guide and people may hike to the lake from salt water with a guide. In May 2007 only one individual possessed an outfitting guiding permit to land on the lake. Point-to-point commercial activity is permitted on Politofski Lake without a permit as long as the passenger has not been provided services that constitute guiding. A commercial pilot can land on Politofski Lake to drop people off but if he guides them to the stream where the steel heads are located he needs to have a Forest Service Permit. Ms. Emerick testified that if someone goes to an air taxi service stating they want to go someplace to catch steel head, the air service representative tells the person they can fly him to a specific place. If the person then asks to go there, that does not constitute guiding.

In 2005 the Forest Service prepared an environmental assessment that would have allowed for a small pool of service days in which clients could be guided on the lake as well as other lakes within the wilderness. Bellows received a copy of the Environmental Assessment (EA). He responded indicating his opposition to restrictions on any aircraft in the South Baranof Wilderness area. In his response he added the following: "The Alaska Statehood Act clearly states all navigable water belongs to the State. I question your authority to enforce any regulations on navigable water." Bellows' participation in the EA process evidences his knowledge

1-08-cr-003-JDR    Case 1:08-cr-00003-JDR    Document 38    Filed 07/21/08    Page 11 of 21    07/19/2008; Page 11 of 21
MEMORANDUM OPINION
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

of the Forest Service regulations applicable to this case.  The permit procedure is still under study by the Forest Service and according to Ms. Emerick the Forest Service cannot issue permits without an appropriate environmental analysis of the affects of an activity on wilderness character including the biophysical and social impact of the activity.

Ms. Emerick considers a permit necessary if a party advertises the use of National Forest lands and makes money from it.  For example, a person may not go on the National Forest lands to film it and sell photographs without a permit.  Ms. Emerick consults the Forest Service Administration Handbook 2709.11 in making her assessments.

The definition of "guiding" appears in the Handbook under Chapter 40, 41.53c, Definitions.  It reads: "Providing services for assistance such as supervision, protection, education, training, packing, touring, subsistence, interpretation, or other assistance to individuals or groups in their pursuit of a natural resource based on outdoor activities for pecuniary remuneration or other gain."  The Handbook illustrates how the Forest Service Agency interprets its own regulations.

Ms. Emerick opined that if a pilot is just hanging out at the plane and observes the people fish there he would not need a permit.  However, if he actually provides supervision, a permit would be necessary.  She further opined that

1-08-cr-003-JDR          MEMORANDUM OPINION          07/18/2008; Page 12 of 21
                         (Trial by Court - Judgment of Acquittal)
                         Signed by Judge John D. Roberts

watching them at their request or remaining at their request for remuneration would fall within the definition of guiding for purposes of the regulation.

In performing her duties Ms. Emerick consults Forest Service Manual 2700, Alaska Region X[10], Juneau Alaska. Section 2721.53 states in part that commercial air taxi service involving National Forest System land requires authorization by a Special Use Permit for tours addressed in Paragraph 5 and package trips addressed in Paragraph 6.

There is no evidence that the Wallaces sought or were provided a tour using National Forest System lands, improvements or resources within the description of Paragraph 5. Nor were they provided an outfitted trip or a guided trip that provided customer care, food, shelter, tutorage, interpretation, care of fish or other services in addition to the transportation for remuneration.

The Manual provides that point to point air services at competitive rates to National Forest System lands, improvements or resources that do not constitute a tour or package trip as defined above do not require a permit.[1] Paragraph 6c states "non-guided, non-outfitted trips onto National Forest System Lands, improvements or resources with fees in excess of competitive point to point transportation rates may fall within a package trip requiring a permit."

_____

[1] In parts of the country outside Alaska point to point transportation may require a permit.

1-08-cr-003-JDR      MEMORANDUM OPINION      07/18/2008 Page 13 of 21
Case 1:08-cr-00003-JDR   Document 36   Filed 07/21/08   Page 13 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

One of the indicia of a tour requiring a permit is that fees are charged per passenger rather than per hour of operation. Charging more than a competitive point to point rate may also suggest that the activity is a package trip. No one factor such as how passengers are charged is determinative of whether the activity should be deemed a tour.

It appears from the billing statement that the Wallaces may have paid for more than point to point transportation. However, I conclude from the evidence that the additional monies was a tip not remuneration for services of supervision or guidance. Dr. Wallace's testimony that he provided Bellows a $200 tip is credible.

The air transportation fees that the Wallaces paid Mr. Bellows was not in excess of the competitive point-to-point rates. Wallace figured he paid Bellows $700 for each of the first two days. He remembered paying $2,000 for the total trip which included a "very liberal tip" of $200. Wallace fished for three days and his wife fished for two days. On his third day of fishing Dr. Wallace flew to a different lake and his portion was $400.00 for air fare. According to Mary Emerick, the Forest Service Permit Administrator, if a pilot knows how long it takes to fly to a particular lake, he can dispense with reference to an hourly rate.

The Forest Service allows recreational users to land hired aircraft in the South Baranof Wilderness without a permit for point to point transportation. Whether an air service quotes a rate for flying to a destination by the hour or quotes the full

1-08-cr-003-JDR          MEMORANDUM OPINION          07/18/2008; Page 14 of 21
Case 1:08-cr-00003-JDR   Document 38   Filed 07/21/08   Page 14 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

price without denoting the hourly charge, the Forest Service will consider the surrounding circumstances to determine whether a permit is required. Ms. Emerick opined that the pilot may choose to do whatever he wants on his own time after dropping the passengers as long as he is not providing a service or helping the passengers in their activity for remuneration.

The government argues that because Bellows carried a firearm and Ms. Wallace was initially afraid of bears at the outset of the fly fish trip then Bellows was necessarily providing a service to her by protecting her from a bear. Bellows, of course, is entitled to carry a firearm for his own protection. There is no evidence that Bellows received any remuneration to provide bear protection to the Wallaces. Whether his firearm was actually sufficient to provide bear protection is beside the point. It is just as likely that Mrs. Wallace agreed to accompany her husband on the fly fish trip after being informed that the bears were likely still in hibernation in May as it is likely that she went on the trip because she could see that Bellows was carrying. There is no evidence that Bellows informed the Wallaces prior to the flight to Politofski Lake that he was going to carry a firearm thereby creating an expectation that he would remain there for their protection from bears. Ms. Emerick testified that Forest Service personnel are required to carry a .375 in the field.

The government argues that Bellows' activity fell within the permit realm because he told the Wallaces where the fishing holes were located. However,

1-08-cr-003-JDR    Case 1:08-cr-00003-JDR    Document 38    Filed 07/21/08    Page 15 of 21
MEMORANDUM OPINION                                    07/18/2008; Page 15 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

Wallace had made other inquiries about locations for steel head fishing. There is insufficient evidence to conclude that Bellows told the Wallaces exactly where to fish. Asking Bellows to fly them to the stream that drains Politofski Lake would not require a permit. Being within shouting distance and pointing in a particular direction in the stream does not by itself constitute sufficient evidence of assistance to a fisherman to require a permit.

The government argues that Bellows' act of helping Mrs. Wallace climb out of the fishing hole in the absence of a permit violated 36 C.F.R. § 261.10(c). Officer Zuniga had asked Mrs. Wallace for her fishing license which she was going to retrieve from a backpack. This circumstance does not mandate the need for a permit.

Harold Dwayne Lambeth owns a private island fishing lodge in Sitka. He Is also a pilot and owns a DeHavilland Beaver that he uses for lodge support to fly clients to and from fishing grounds. His relationship with Bellows is strained as he attributes part of his delay in obtaining an air taxi license to Bellows' constant complaints to the FAA about his alleged illegal activities. In 2003 Lambeth purchased aviation fuel from Bellows. At the end of the 2003 season Bellows told him that he did not want to do business with him anymore.

Lambeth operates under Part 91 not part 135 and is not allowed to fly people for hire. He can only fly clients of the lodge commercially. He charges

1-08-cr-003-JDR    Case 1:08-cr-00003-JDR  Document 38N  Filed 07/21/08   Page 16 of 21   07/18/2008  Page 16 of 21
MEMORANDUM OPINION
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

customers for a complete package that includes air, fishing equipment, meals and accommodations. His permit allows him to fish the Politofski drainage while flying to the saltwater or flying non-commercially to the Politofski Lake. Since 2002 he has observed Bellows' airplane at the Politofski Lake on numerous occasions.

On May 17, 2007 Lambeth observed Bellows' airplane at Politofski Lake. After landing and walking down the Politofski Creek, he saw Bellows who was on the bank about 15 feet from where some other people were fishing in the stream. On this occasion Lambeth observed Bellows make arm movements which he interpreted as showing a person how to fish "the drift." He did not hear any casting instruction but rather made a visual observation only from about 300 feet. Both Dr. and Mrs. Wallace were experienced steel head fishermen and did not need casting instructions. Dr. Wallace did not testify to any coaching of him or his wife by Bellows. Lambeth opted to turn around and leave a note on Bellows' airplane without talking to Bellows.

Lambeth observed Bellows on several other occasions in the same location. He testified that he observed Bellows telling other people where to go and what holes to cast in. However, he was not able to identify these persons and this testimony must be discounted because he did not know whether they were paying clients.

Lambeth never told any of the Forest Service officers with whom he had contact about the alleged illegal guiding activities of Bellows. Lambeth was unable to provide specifics in support of his allegations of Bellows' activities on June 23, 2007. For example, he did not recall whether the persons close to Bellows were male or female or

young or old.  He admitted on cross-examination that he did not know whether they were paying clients.  In the past Lambeth had taken some of his own employees without charge to Politofski Creek to fish for steel head.

Douglas Solberg has been a pilot since 1969.  He holds an Alaska freshwater fish and game license and was one of the principals starting Ward Air in 1975.  He also holds a single pilot operator certificates.  He testified regarding "stand-by time" indicating that each company is different and that usually stand-by time is charged at a third to a half of the charter rate.  In his experience, for some clients, cost is not an issue and they would rather spend the money for stand-by so they can leave when they want to rather than set a fixed time for the return trip.  Stand-by time is regulated by the air service not the government.

Ronald Salmon owns and operates Salmon Air Inc. in Sitka.  The business is a single pilot single aircraft Part 135 operation.  His FAA certificate contains a stipulation that he and Bellows can fly for each other by relinquishing temporary control of their respective air services.  Sometimes he does not charge stand-by time if he has a chance to fish while the passengers fish.  He testified that steel head customers will often have the pilot stand-by even when it does not make sense economically.  He also testified that when he charges for stand-by time he explains the stand-by charge to the customer.  He has fished for steel head at Politofski Creek with Ken Bellows when neither had paying customers.

Marlys Dee Hanson does the bookkeeping for Air Sitka.  The billing rate for stand-by time is one-half of the hourly rate.  She authorized a web site that advertises the

1-08-cr-003-JDR   MEMORANDUM OPINION   07/18/2008; Page 18 of 21
Case 1:08-cr-00003-JDR   Document 35   Filed 07/21/08   Page 18 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

Inn and Air Sitka. The web site states: "Sitka's newest Inn has teamed up with Sitka's oldest and most experienced aviation team." It also states: "Staying at the Inn? Ask about flight seeing trips." Advertising that the air service can drop a person off at a steel head stream so he can fish does not constitute advertising of National Forest Service lands. Kenneth Bellows did not own a B&B in 2006 when the Wallaces first planned to come to Southeast Alaska to fish for steel heads. The billing records for Sitka Air show that Duncan Wallace checked in the Fly-In Fish Inn on May 16 and checked out May 20, 2007. He paid $140 a night plus taxes.

Forest Service law enforcement Officer Michael Welch landed on Politofski Lake on May 22, 2007. After hiking for 10-12 minutes from the lake he observed Bellows. Bellows indicated that he had 3 or 4 people with him from Washington, D.C. , fishing in the area. Bellows stated that he was not guiding but they were paying for him to stand-by. Officer Welch eventually cited Bellows for his guiding activities that day.

At trial Officer Welch was asked whether Bellows was providing customer care on that particular day. The officer responded that "he (Bellows) probably did [guide]." When pressed about what customer care Bellows provided on May 22, 2007 other than flying the clients to Politofski Lake, Officer Welch stated "I wouldn't be able to specify offhand." On cross-examination the officer was asked if Bellows provided the clients food, shelter, tutorage, interpretation, care of fish or

1-08-cr-003-JDR          MEMORANDUM OPINION          07/18/2008; Page 19 of 21
Case 1:08-cr-00003-JDR   Document 38   Filed 07/21/08   Page 19 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

any other services for the people other than point to point services. The officer did

not know. He also did not know the name of Bellows' clients.

Officer Welch considered the payment for stand-by time to be "above

and beyond the normal point to point type of operation." Although the officer had a

"fairly good" impression in his own mind that Bellows was conducting a service on

National Forest Service lands in violation of 36 C.F.R. § 261.10(c) he provided no

specifics.

## Conclusions

Remaining within the proximity of the clients does not alone render the

activity a service requiring a permit. The Forest Service special uses administrator,

Ms. Emerick, testified that a pilot could fish while his clients fished without a permit

if the pilot receives no remuneration for remaining there. The evidence is insufficient

that Bellows was paid monies specifically to remain with the Wallaces while they

were fishing at Politofski Creek. The evidence is insufficient to prove that Bellows

offered tutorage as to how to fish or where specifically to catch the fish in the creek.

The hand gesture that Mr. Lambeth described in his testimony and which he

attributes to demonstrating how to fly cast does not prove that Bellows provided

interpretive services beyond a reasonable doubt particularly in the absence of any

corroborating evidence such as testimony from the Wallaces.

1-08-cr-003-JDR      Case 1:08-cr-00003-JDR    Document 136    Filed 07/21/08    Page 20 of 21
MEMORANDUM OPINION                                          07/18/2008; Page 20 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts

The Forest Service Guidelines do not define the breath of competitive point-to-point transportation rates for a given location or describe how the competitive point-to-point transportation rate is determined. The monies paid by Dr. Wallace for the services of Mr. Bellows are consistent for a competitive point-to-point rate for air transportation even though no itemized billing was produced as to the Wallace's fishing trip.

By steel head fishing in the same creek as the Wallaces, Mr. Bellows created the appearance, if not an apparent expectation on the part of the Wallaces, that he was supervising their fishing. Such expectation may justify the issuance of a citation but it is insufficient by itself under the facts shown to constitute proof beyond a reasonable doubt that Bellows conducted work activity or service on National Forest system lands without a special use authorization permit. Wherefore, the court finds that Kenneth Bellows is not guilty of the charges contained in the information. A separate judgment shall be entered accordingly.

DATED this 18th day of July, 2008, at Anchorage, Alaska.


 /s/ John D. Roberts                         
JOHN D. ROBERTS
United States Magistrate Judge

1-08-cr-003-JDR    Case 1:08-cr-00003-JDR  Document 38N  Filed 07/21/08   Page 21 of 21   07/18/2008: Page 21 of 21
(Trial by Court - Judgment of Acquittal)
Signed by Judge John D. Roberts